UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 22-96 |
| GREGORY JOHNSON | SECTION "L" (2) |

**ORDER & REASONS**

Before the Court is Defendant Gregory Johnson's Motion to Suppress relating to a firearm found in his vehicle following his arrest. The Court conducted a suppression hearing on December 7, 2023. After a review of the briefings, oral argument, testimony, and applicable law, the Court now rules as follows.

## I. BACKGROUND:

This criminal action was brought against Defendants Gregory Johnson ("Johnson") and Keith Bourgeois ("Bourgeois") for violations of the Controlled Substances Act and the Federal Gun Control Act. Bourgeois was rearraigned on May 18, 2023 where he pled guilty to two counts in a superseding bill of information and his sentencing is set for January 18, 2024. Johnson has not been rearraigned and has a trial date set for January 16, 2024 as to four counts in a superseding indictment: (1) conspiracy to distribute and possess with the intent to distribute more than 500 grams of cocaine; (2) and (3) possession of firearm in furtherance of a drug crime; and (4) felon in possession of a firearm. R. Doc. 30.

At the time of their arrest, law enforcement had been surveilling Bourgeois's residence on Foucher Street in advance of executing a warrant to search the property and its vehicles and curtilage. R. Doc. 106 at 1; R. Doc. 103-1 at 1-2. The government alleges that law enforcement

1

observed Johnson arrive at Bourgeois's apartment sometime after 9:00am on April 19, 2022 and leave shortly after, getting into his gray Mercedez Benz. R. Doc. 106 at 1. At around 10:50am, law enforcement allegedly observed a USPS package arrive to Bourgeois's apartment which Bourgeois received and took inside. *Id.* Shortly after the package arrived, law enforcement observed Johnson return and park "approximately 350 feet away on Amelia Street and South Sarasota Street," which law enforcement believes was done to evade detection because Johnson possibly noticed the police presence. *Id.* at 2. Johnson allegedly entered the apartment and then shortly after, he and Bourgeois exited with Johnson, heading in the direction of Johnson's car, "carrying a Styrofoam cooler and a chainsaw." *Id.* Law enforcement stopped Bourgeois and Johnson "on the 2100 block of Foucher Street" approximately 300 feet from Johnson's car, which was parked around the corner on Amelia Street. *See id.* After obtaining a search warrant for the cooler, the police found that it contained approximately four kilograms of cocaine. *Id.* No warrant was obtained to search Johnson's car. Instead, law enforcement maintains that they seized his car concluding it was involved in drug trafficking and when they entered the car, intending to drive it to a law enforcement location they found within plain view a firearm in the driver's side door panel.

## II. PRESENT MOTION

On November 3, 2023, Johnson filed the instant motion to suppress, alleging violations of his Fourth Amendment rights relating to the search and seizure of his vehicle, or alternatively he requested an evidentiary hearing. R. Doc. 103. Johnson argues that the search of his vehicle was warrantless, as law enforcement obtained warrants to search Bourgeois's apartment, vehicles, curtilage, including Bourgeois's vehicle, as well as the Styrofoam cooler, but not his Mercedes, which he argues was parked outside of the apartment's curtilage. *Id.* at 3-4. Johnson argues (1) that the search was illegal because it was without a warrant, and (2) that the search was illegal

2

because law enforcement lacked probable cause and had no legal justification to seize and search his vehicle. *Id.* at 3-6. He further argues that there was no evidence he was walking to his vehicle when he was stopped and arrested, and even if he were walking to his vehicle, this fact alone does not amount to probable cause that the vehicle contained evidence of a crime. *Id.*

The government opposes the motion and argues that this was an administrative inventory search conducted pursuant to standard regulations and procedures and thus did not violate Johnson's Fourth Amendment rights. R. Doc. 106 at 5. The DEA's policy on inventory searches states that a "complete inventory shall be made of all property that is taken into custody by DEA for safekeeping, regardless of whether probable cause exists to search the property." *Id.* at 5 (quoting DEA policy). The government maintains that law enforcement had probable cause to believe Johnson's vehicle was being used to facilitate the sale and transportation of controlled substance, as they observed him driving back and forth to this apartment on the day in question and suspected he was carrying the cooler back to his vehicle when he was stopped and arrested. *Id.* at 6.

Johnson filed a reply brief arguing that the government missed a critical step in its claim that the search falls under the inventory search exception: "nowhere does the Government show – or event attempt to show – that the vehicle was lawfully seized in the first place prior to any inventory search." R. Doc. 109 at 1. Johnson concedes that a lawful inventory search is not subject to the warrant requirement but argues that the seizure of the vehicle was "illegal because it was not made pursuant to a lawful arrest or search," as "Johnson was not pulled over while driving and arrested such that his vehicle was left abandoned on the side of the road. Rather, he was arrested while walking down the stairs of a residence, almost a block away from his vehicle, which was lawfully parked in a safe manner." *Id.* at 3. Further, Johnson notes that the two forfeiture statutes

cited by the government, 21 U.S.C. § 853 and § 881, require a court's action, such as a warrant, restraining order, or injunction, or otherwise require the search to fall under a warrantless exception like the inventory search. *Id.* at 2-3.

Johnson also notes the absence of any "community caretaking function" claimed by the government that would permit a warrantless seizure in this circumstance and characterizes the government's inventory search argument as a "*post hoc* justif[ication of] its subsequent warrantless search" as "an attempt to shoehorn it within the limited *Bertine* exception." *Id.* at 4. In sum, Johnson argues that the "inescapable conclusion is that this was a search to discover incriminating evidence, not a legitimate search following a vehicle seizure justified by a public safety or community caretaking function." *Id.* at 4-5.

## III. APPLICABLE LAW

A party urging a motion to suppress "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [their] Fourth Amendment rights." *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

### a. The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Herring v. U.S.*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The Supreme Court's Fourth Amendment jurisprudence has established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* Warrantless searches are "per se unreasonable unless they fall within a few narrowly defined exceptions." *U.S. v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012) (quoting *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002)). When the

government conducts a search or seizure without a warrant or probable cause, the government bears the burden of showing by a preponderance of the evidence that the search or seizure falls within an exception and was constitutional. *U.S. v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

Inventory searches are one exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "The policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." *Id.* (citation omitted). The purpose of inventory searches is to "protect an owner's property while it is in the custody of the police, [] insure against claims of lost, stolen, or vandalized property, and [] guard the police from danger." *Id.* at 372 (citing *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976)). It is a form of community caretaking of seized property. The Supreme Court has explained that "as a part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *Opperman*, 428 U.S. at 368 (citation omitted). Examples of vehicle seizures pursuant to the community caretaking function include vehicle accidents, "to permit the uninterrupted flow of traffic," to remove "disabled or damaged vehicles . . . from highways or streets," and to remove "automobiles which violate parking ordinances and which thereby jeopardize both public safety and the efficient movement of vehicular traffic." *Id.* at 368-69.

Once a vehicle is lawfully seized pursuant to this community care function, an inventory search is reasonable only if it is "conducted pursuant to standardized regulations and procedures that are consistent with (i) protecting the property of the vehicle's owner, (ii) protecting the police against claims or disputes over lost or stolen property, and (iii) protecting the police from danger." *U.S. v. Hope*, 102 F.3d 114, 116 (5th Cir. 1996). The Fifth Circuit will uphold an inventory search as reasonable when it is "performed according to standard regulations and procedures consistent with the proper purpose of a noninvestigative inventory search." *U.S. v. Privett*, 68 F.3d 101, 103

(5th Cir. 1995); *see also Hope*, 102 F.3d at 116-17 (finding an inventory search of a vehicle unreasonable because of the lack of evidence to support a standard procedure or department guideline was followed); *McKinnon*, 681 F.3d at 210 (finding a vehicle search reasonable pursuant to a departmental towing policy). Another instance in which seizure is permissible is in connection with a lawful forfeiture.

### b. Seizure & Forfeiture

In certain circumstances, the Controlled Substances Act authorizes forfeiture of property. One who is "convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States" any property involved in the violation or used or intended to be used to facilitate or commit the violation. 21 U.S.C. § 853. A vehicle may be subject to forfeiture if it is "used, or [is] intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]." 21 U.S.C. § 881(a)(4). Property falling under § 881 "may be seized by the Attorney General in the manner set forth in section 981(b)." *Id.* at § 881(b). That section provides, in pertinent part, that

> a seizure may be made without a warrant if - . . .
> (B) there is probable cause to believe that the property is subject to forfeiture *and* -
>     (i) the seizure is made pursuant to a lawful arrest or search; or
>     (ii) another exception to the Fourth Amendment warrant would apply[.]

18 U.S.C.§ 981(b)(2)(B) (emphasis added). Thus, the plain language of the statute requires the government to show more than only probable cause when seizing property absent a warrant. It is important to note that the statutory language in 21 U.S.C. § 881(b) cross-referencing 18 U.S.C. § 981(b) was added in 2002, and prior versions of the Controlled Substances Act authorized seizure without a warrant in any one of four enumerated circumstances, one of which was "the Attorney

General has probable cause to believe that the property is subject to civil forfeiture under this subchapter." 21 U.S.C. § 881(b)(4) (West 1996).[1]

### c. Probable Cause

Regardless of the amended § 881(b) language, probable cause to believe the property would be subject to forfeiture is still a requirement that law enforcement must satisfy when seizing said property. Accordingly, a brief review of how federal courts interpret probable cause in these circumstances is appropriate.

The Fifth Circuit has held that law enforcement lacked probable cause to seize a vehicle that was parked at a residence, unmoving and unoccupied, when the officers "had plenty of time to obtain, and did obtain, a warrant to search the house [but] [n]o warrant was obtained for the seizure of the automobile." *U.S. v. Pruett*, 551 F.2d 1365, 1369-70 (5th Cir. 1977). In that case, law enforcement intercepted a package of cocaine and replaced it with a decoy. Once the defendant's wife retrieved it from the post office, they tailed her back to the residence where they then sought a search warrant for the home. *Id.* at 1367. The officer waited outside the residence for "about an hour and twenty minutes" for the search warrant to issue and then he and other agents executed the warrant. *Id.* However, as they "were preparing to leave, a decision was made to seize the vehicle which transported the controlled substance" in the decoy package, and the agent testified that "the normal procedure for such seizure involved an inventory search." *Id.*

The Fifth Circuit was unconvinced and found the seizure unlawful. Reasoning that it is "quite clear" that had the seizure "been valid the search would likewise have been valid," the court

---

[1] The government relies on *United States v. Judge*, in which the Fifth Circuit characterized the government's showing in such circumstances as requiring only probable cause. 864 F.2d 1144, 1145 (5th Cir. 1989). In *Judge*, the defendant was arrested in a restaurant following a sting operation, and, upon his arrest, DEA agents searched his vehicle, which was parked lawfully inside the restaurant parking lot. However, the case does not provide much detail on the probable cause analysis.

7

concluded that the failure to get a warrant in these circumstances rendered the seizure, and subsequently the search and its fruits, invalid. *Id.* at 1369-70. The court found it specifically relevant that the car was not moving, was unoccupied, parked at the residence, and further, the officers had the time and foresight to seek, wait for, and obtain a search warrant for the residence. *Id.* The court reasoned as follows:

> We are impressed by the fact that as to the automobile there was more than 'probable cause to believe.' The officers knew for a fact that Mrs. Pruett, unwittingly or no, had indeed used the automobile to transport the cocaine from the post office to the house. Since they had absolute knowledge, was it necessary that they have that knowledge confirmed by an impartial magistrate before effecting seizure under nonexigent circumstances? We think that it was.

*Id.* at 1370. The court distinguished between stopping and seizing a vehicle on the open road and "'entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose' and that the officers were legally on the property is 'immaterial.'" *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 458, 463 (1971)). Under these facts, the Fifth Circuit held that the seizure violated the Fourth Amendment and that the fruits must be suppressed.

The vehicle in *Pruett* was parked at the residence in question. In *U.S. v. Edwards*, the Tenth Circuit found law enforcement lacked probable cause to search the defendants' vehicle located about "100 to 150 feet from where the police were questioning" them. 632 F.3d 633, 636 (10th Cir. 2001). This search was done prior to law enforcement's decision to impound and take the car into custody. *Id.* ("After the police searched the car, they decided to impound it so that the Federal Bureau of Investigation [] could later search it again."). Based on that fact, as well as the officer's testimony that he was searching for evidence, the court found it inescapable to conclude that this was a search "conducted for investigative rather than administrative purposes." *Id.*

In another case involving a vehicle parked far away, *United States v. Rogers*, the police searched the defendant's truck which was parked over 200 yards away at a different property

8

owned by a different individual and in no way encompassed by their search warrant for the defendant's property. 2013 WL 435946, at *2-4 (N.D. Miss. Feb. 4, 2013). The court found it particularly relevant that at the evidentiary hearing, law enforcement claimed that they called the judge who issued the warrant to permit an expansion of the warrant's named premises, yet "made no effort whatsoever to document the alleged telephone call, and the issuing judge, according of the officers and representations by the Assistant United States Attorney, had absolutely no recollection of having received such call." *Id.* at *4. Accordingly, the court found no probable cause existed to seize the vehicle and granted the defendant's motion to suppress the items found within it. *Id.* at *7.

### IV.   DISCUSSION

In the present case, the government alleges that law enforcement had probable cause to believe Johnson's vehicle was used to transport or facilitate the sale of controlled substances based on their surveillance that morning where they observed him arriving, leaving, then returning shortly after the USPS package was delivered to Bourgeois's apartment. They argue the vehicle was thus subject to forfeiture under 21 U.S.C. § 881(a)(4) and that the search was conducted pursuant to DEA policy on inventory searches once it was seized.

While the Court is satisfied that the DEA followed a valid policy on inventory searches, it is not persuaded that the search in this case falls within the inventory search exception to the warrant requirement. The critical issue here is whether the vehicle was properly taken into custody in the first place. To be seized pursuant to the Controlled Substances Act's forfeiture provisions, if there is no warrant, the government must show (1) probable cause to believe the property would be subject to forfeiture, in this case, that the vehicle in question was used to transport narcotics, *and* (2) that either the seizure was done pursuant to a lawful arrest or search, or that a warrant

exception applied. *See* 18 U.S.C.§ 981(b)(2)(B). The Court understands the language that the seizure be done "pursuant to a lawful search or arrest," as used in § 981(b)(2)(B)(i), to implicate the community caretaking function, such as when an individual is lawfully arrested upon being pulled over and the vehicle must be taken into custody for community caretaking purposes. The government has argued only probable cause.

### A. Suppression Hearing

At the suppression hearing held before this Court on December 7, 2023, the Court heard testimony from one of the Drug Enforcement Agency ("DEA") agents, Agent Picone, who executed the search warrants of Bourgeois's residence and then subsequently obtained a warrant to search the cooler and Bourgeois's truck. He testified that agents from at least three law enforcement agencies were present and assisting in the execution of the search warrant of the apartment: New Orleans Police Department ("NOPD"); Louisiana State Police ("LSP"); and DEA. He testified that DEA was assisting in the execution of the warrant and arrived at the scene sometime in the morning of April 22, 2021. Other law enforcement agents were already on the scene, and Agent Picone described that there was no one specific place everybody gathered but that they were scattered throughout the area surveilling and waiting for a safe time to execute the warrant to search the apartment. At this time, the only search warrant was for Bourgeois's apartment and curtilage.

Agent Picone described that he watched Johnson arrive, enter the apartment, then leave shortly after in his Mercedes, at which point Agent Picone attempted to tail Johnson. He described that DEA had been investigating Johnson as a drug dealer but had not yet pinpointed an address for him, and by tailing him he hoped to learn that information. When asked about the Mercedes, Agent Picone testified that DEA was aware Johnson may have a Mercedes and/or a Range Rover

but had not seen the car before that morning. He told the Court he was unsuccessful in tailing Johnson and once he lost him, he returned to Bourgeois's apartment to assist with the search warrant.

While he was surveilling the apartment again, Agent Picone testified that he witnessed a USPS package arrive, Bourgeois brought it inside, and then "not long" after, Johnson returned. The agent testified that an unidentified law enforcement officer radioed that the Mercedes had returned, and shortly after he witnessed Johnson approach the apartment on foot and enter. The agent testified that he believed Johnson was tracking the USPS package and that was why he returned to the apartment so shortly after its arrival. He testified his belief was confirmed by evidence subsequently obtained from a lawful warrant of Johnson's cell phone, which contained a tracking receipt for the package. Importantly, that warrant was not obtained until days later, and, as revealed in cross examination, law enforcement did not know on the morning of the arrest that Johnson was tracking this package.

Agent Picone described that law enforcement waited until Bourgeois and Johnson exited the apartment to execute the search warrant on Bourgeois's apartment because it was safer. He testified that Johnson came out of the apartment first with Bourgeois behind him, and that Johnson was walking in the direction of his parked car when he was apprehended. The apartment in question is on the second story of a house and is accessible via an outdoor metal staircase that is visible from the sidewalk. The stairway runs parallel to the sidewalk with its bottommost stair in the direction of Johnson's parked car and its topmost stair in the opposite direction.

Agent Picone testified that Johnson had already descended the stairs and was heading toward his car when law enforcement apprehended and arrested him and Bourgeois. Upon apprehension, Johnson was told to wait somewhere in the shade under an awning nearby, under

law enforcement supervision, while the apartment was searched in accordance with the apartment's search warrant. Because Johnson was arrested holding a Styrofoam cooler, law enforcement then sought another warrant for the cooler. Agent Picone testified that they had to wait approximately an hour for the warrant to be drawn up and approved. He also testified that they obtained a separate warrant to search Bourgeois's truck, however it is unclear whether that truck was searched pursuant to the original warrant which included curtilage. The facts are undisputed however that law enforcement sought and obtained at least a second warrant for the cooler while they were at the scene of the arrest and that they and Johnson and Bourgeois waited at the scene for that warrant to issue before searching the cooler. No warrant however was requested nor received to search Johnson's car.

Law enforcement searched Bourgeois's truck but did not seize it pursuant to forfeiture. Both men were ultimately taken into custody and Agent Picone testified that, pursuant to DEA policy, law enforcement seized the Mercedes and entered the vehicle in order to drive it back to DEA headquarters. He also testified that it is not unusual for a law enforcement officer to drive a seized vehicle in order to get it to headquarters. It was upon entering the vehicle that law enforcement saw the firearm in plain view. He acknowledged that the Mercedes was parked approximately two blocks away and was not within eyesight of any of the parties at the time of the arrest. It was legally parked and was not in the way of oncoming traffic.

When asked by the Court why the DEA did not seize Bourgeois's truck, the agent testified that it was an old truck and probably was not worth much. When the Court asked why the DEA was monitoring Johnson and what it knew of him prior to that morning, the agent testified that Johnson was a "big fish," a suspected drug dealer, and they had been tracking him for some time with limited success. It was at this point the agent mentioned that they were aware that Johnson

possibly drove a Mercedes or Range Rover, but that they had not identified the vehicle prior to that morning.

### B. Analysis

Three law enforcement agencies executed at least two lawful search warrants on April 22, 2021, first the apartment and then, upon the issuance of a second warrant requested from the scene, the cooler. They waited for over an hour for the cooler warrant to arrive. There clearly was enough time to get a warrant to search Johnson's car. They got one or maybe already had one to search Bourgeois's truck. The Court concludes that they simply forgot to get a warrant and when they went to the car and found the gun in clear sight, they then decided to seize the vehicle and conduct an inventory search. The Court is not persuaded that the Mercedes was lawfully seized. The statute requires more than just probable cause, and the government fails to allege more. That said, the Court also finds that probable cause was lacking in this instance and decides this Motion on that basis.

Johnson's car was parked twice as far from the scene of his arrest as the vehicle was in *Edwards*. *See* 632 F.3d at 636. Johnson was arrested just outside of an apartment at the bottom of a staircase whose directional orientation happened to spit him out on the sidewalk in the direction of his parked car, which was not in eyeshot and was still several blocks away. The government has failed to show by a preponderance of the evidence that Johnson was *on his way to* his vehicle at the time of his arrest, as opposed to heading to a different destination in that direction, or even simply exiting the apartment and stepping aside to let Bourgeois, walking behind him, also clear the stairway. Law enforcement did not know he was tracking the package on his cell phone until days later when they obtained a warrant for his phone and found the tracking receipt.

Further, under *Pruett*, the Fifth Circuit has found it unreasonable to seize a vehicle when law enforcement (1) had reason to believe it was used to transport narcotics, (2) the car is unoccupied, unmoving, and legally parked, and (3) the officers had the time and foresight to obtain warrants but simply did not do so. In *Pruett* specifically the officers *watched* Mrs. Pruett drive the package in the vehicle. The Circuit still felt that permitting this seizure under the ruse of forfeiture untenable.

Here, law enforcement had never witnessed the Mercedes transport narcotics, it was parked legally a couple of blocks away, and it was unmoving, unoccupied, and legally parked. Law enforcement had the foresight to call for a second warrant for the cooler Johnson was carrying while arrested and had the time to wait for this warrant to be issued, but they did not seek a warrant for Johnson's car. The agent testified at the suppression hearing that Johnson was a big fish, they had been investigating him for some time, and they had heard he drove a Mercedes and/or a Range Rover. They saw him arrive at the apartment earlier that morning in the Mercedes, and then tailed him in the car. The Court cannot help but wonder why law enforcement did not seek a warrant for his car under these circumstances.

Based on the briefings, the evidence adduced at the suppression hearing, and the applicable law, the Court cannot reasonably conclude that this was a valid seizure and therefore the inventory search exception to the warrant requirement does not apply. Sometimes, too many cooks in the kitchen leads to small oversights, such as the request for a warrant for one item but not another. That does not permit a post hoc finding of probable cause when none existed at the time of the arrest. There was no probable cause to find that the vehicle was used to transport narcotics and therefore subject to forfeiture. Law enforcement could have obtained another warrant for the car,

as they did the cooler, but they did not. The fruits of such seizure, in this instance the firearm, must therefore be suppressed.

    For the foregoing reasons, the Court GRANTS Defendant Gregory Johnson's Motion to Suppress.

    New Orleans, Louisiana, this 18th day of December, 2023.

_____
United States District Judge